IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| ALAN DICKSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-17-303-R |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Alan Dickson (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). United States District Judge David L. Russell has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). Doc. 13.

After a careful review of the record (AR), the parties' briefs, and the relevant authority, the undersigned recommends the entry of judgment affirming the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

I.  **Administrative determination.**

   A.  **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

B. **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

C. **Relevant findings.**

1. **Administrative Law Judge (ALJ) findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis in order to decide whether Plaintiff was disabled during the relevant

timeframe. AR 11-12;[1] *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) had severe "bipolar disorder, Chronic Pulmonary Insufficiency, degenerative disc disease; chronic pain syndrome, osteoarthritis of the knees, late effects of multiple combined fractures of ribs, diabetes mellitus with peripheral neuropathy, and borderline intellectual functioning";

(2) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity[2] (RFC) for light work with various work restrictions;

(4) was unable to perform certain past relevant work, but could perform jobs existing in the national economy; and thus

(5) had not been under a disability as defined by the Social Security Act since his alleged onset of disability on February 24, 2014.

AR 12-21.

### 2. Appeals Council findings.

The Social Security Administration's Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision

---

[1] For the parties' briefs, the undersigned's page citations refer to this Court's CM/ECF pagination. Page citations to the AR refer to that record's original pagination.

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3

in this case. *Id.* at 1-5; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). In applying that standard, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

### B. Issues for judicial review.

Plaintiff contends the ALJ (1) improperly rejected two treating physicians' opinions, and (2) should have ordered additional tests to develop the record. Doc. 15, at 2-9.

### C. Whether the ALJ properly rejected the treating physicians' opinions.

The ALJ considered but ultimately gave little weight to two treating physicians' opinions.[3] The undersigned finds no error in the decision.

---

[3] In summary, Plaintiff argues the Tenth Circuit has held "the opinions of non-treating physicians are of *dubious value and suspect reliability*" and so "the treating physicians should have received controlling weight. Doc. 15, at

4

## 1. The treating physician rule.

Through its governing regulations, the SSA tells claimants that, "[g]enerally, we give more weight to medical opinions from your treating sources . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). It explains this is so because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultative examinations or brief hospitalizations.

*Id.* Binding court precedent underscores the significance of treating source opinion evidence, holding that when an ALJ "evaluat[es] the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser*, 638 F.3d at 1330. At the first step, the ALJ must determine if the opinion "is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "If

---

6. However, the ALJ did not reject the treating physicians' opinions based on the agency physicians' opinions. AR 16-20. Moreover, Plaintiff does not actually challenge the ALJ's findings as to the agency physicians, *id.*, *passim*, and this Court will not create an argument for him. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (concluding argument was "insufficiently developed" and declining to "speculate on" claimant's behalf).

the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.*

If the ALJ finds the opinion is not entitled to controlling weight, he must then proceed to the second step of the inquiry to "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331 (quotation omitted). So long as the ALJ provides a well-reasoned discussion, his failure to "explicitly discuss" all the factors "does not prevent [the] court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

### 2. Dr. Marcus Fidel's treatment notes and opinion.

Dr. Fidel, a psychiatrist, first examined Plaintiff in July 2013 and diagnosed him with "Bipolar Mood Disorder MRE mixed." AR 336-38. Dr. Fidel noted Plaintiff's symptoms seemed to be worsening but his comorbidities were stable. *Id.* at 338. Dr. Fidel prescribed several medications and asked

6

Plaintiff to return in six weeks. *Id.* at 338-39. Dr. Fidel made similar findings in September 2013, adding a diagnosis: "[rule out] Borderline Personality Disorder vs. Malingering." *Id.* at 333-34. Again, Dr. Fidel asked Plaintiff to return in six weeks. *Id.* at 335. After November and December 2013 examinations, Dr. Fidel noted Plaintiff's mood was improved, his symptoms were "improving," and his comorbidities were "stable." *Id.* at 325-31. Dr. Fidel described Plaintiff's symptoms as worsening in February and April 2014, but told Plaintiff he need not return to the clinic for another two months. *Id.* at 318-24. Dr. Fidel added to Plaintiff's diagnosis in April 2014, finding he had "Bipolar Mood Disorder MRE Depressed, Impulse control Disorder [not otherwise specified] [rule out] Intermittent Explosive Disorder" and "Borderline Intellectual functioning." *Id.* at 320. However, throughout Plaintiff's treatment with Dr. Fidel, he showed intact attention and concentration, memory, orientation, judgment and insight, had normal thought processes, and had no abnormal psychotic thoughts. *Id.* at 318-36.

In February 2014, Dr. Fidel prepared a "[t]o whom it may concern letter" repeating his diagnoses and writing in relevant part: "Since the last visit [Plaintiff] has declined in function and is not able to work due to his mood and impulse control." *Id.* at 306.

The ALJ discussed this evidence but gave Dr. Fidel's opinion that Plaintiff "is not able to work" limited weight. AR 16-18. The ALJ explained

7

Dr. Fidel had not "describe[d] specific reasons for his vague opinion" and his opinion was "not supported by the medical records, discussed above." *Id.* at 18. Moreover, the ALJ believed Dr. Fidel's opinion was undermined by his request to see Plaintiff only "every six to eight weeks." *Id.*

The undersigned finds no reversible error in this analysis. For example, Plaintiff first claims the ALJ erred in relying on the vagueness of Dr. Fidel's opinion. Doc. 15, at 3. However, this is a legitimate ground for rejecting a treating physician's opinion. *See Marshall v. Astrue*, 315 F. App'x 757, 761 (10th Cir. 2009) ("[B]ecause [the treating physician's] opinion is 'brief, conclusory, and unsupported by medical evidence,' we conclude the ALJ did not err in rejecting it."). Indeed, Dr. Fidel's letter offered no opinion on Plaintiff's actual mental limitations and his opinion Plaintiff cannot work is "reserved to the Commissioner." *Duncan v. Colvin*, 608 F. App'x 566, 573 (10th Cir. 2015). Such an opinion, "even when offered by a treating source, [is] never . . . given special significance." *Id.*

Next, Plaintiff claims Dr. Fidel's medical records do not conflict with his opinion, but points only to a "remote IQ score of 71" to support his argument. Doc. 15, at 4. But that "IQ test" score "is from an earlier adjudication." AR 15. Further, the question is not whether the medical record supports Dr. Fidel's *diagnosis* (the ALJ obviously believed it did), but whether it supports his *opinion*. Plaintiff offers no substantive argument or examples on this point,

and it is not this Court's role to reweigh the evidence. *See Newbold*, 718 F.3d at 1262.

Finally, Plaintiff alleges the ALJ improperly considered the frequency of Plaintiff's visits with Dr. Fidel, Doc. 15, at 4-5, but that is yet another legitimate factor for the ALJ to consider. *See Krauser*, 638 F.3d at 1331.

In sum, the undersigned finds the ALJ properly considered the relevant factors and gave specific, legitimate reasons for rejecting Dr. Fidel's vague opinion regarding Plaintiff's alleged inability to work. So, the undersigned finds no reversible error on this ground.

### 3. Dr. Rosemary N. Ayitey's treatment notes and opinion.

The record reflects Plaintiff visited Dr. Ayitey[4] for only *physical* complaints from January 2013 to August 2014. AR 417, 419, 421, 423, 426, 428, 430, 433, 435. And while the physician *noted* Plaintiff's mental health diagnoses, she did not directly treat the symptoms, instead commenting Plaintiff received his mental health care elsewhere. *Id.* at 417, 423, 426, 430, 435. Nevertheless, on July 28, 2014, Dr. Ayitey wrote in her treatment notes:

> Patient is highly recommended for SSD without any reservations due to the progressive deterioration in his mental health. It is very discouraging to observe the gradual deterioration in a patient you have managed for years and to see his quality of life worsening. There is no way he can be gainfully employed. He has been sober

---

[4] As Plaintiff notes, the ALJ referred to Dr. Ayitey as Dr. Alan Dickson. AR 19. This is simply a scrivener's error.

9

> from alcohol use in over a year. Denying this 37 year old male SSD and having his aged parents continue to care for him is disheartening.

*Id.* at 421.

The ALJ gave this opinion little weight, finding Dr. Ayitey "does not describe specific reasons for [the] vague opinion[]" and the "opinion[] [is] not supported by the medical records, discussed above." *Id.* at 19.[5] The undersigned again finds no grounds for reversal.

Rather than point to any over-looked or conflicting evidence,[6] Plaintiff offers only conclusory allegations that Dr. Ayitey's opinion was "well supported." Doc. 15, at 5-6. But Dr. Ayitey did not primarily treat Plaintiff for his mental health issues and the ALJ properly relied on the opinion's vagueness to reject it. *See supra* § II(C)(2). Plaintiff simply fails to establish any reversible error on this issue.

---

[5] The ALJ commented Dr. Ayitey had written two "generic notes," citing "Exhibits B6F, p. 5 & B10F, p.1." AR 19. The opinion found on page one of B10F belongs to Dr. Camisa Stewart. *Id.* at 522-24.

[6] Plaintiff does claim Dr. Ayitey diagnosed him with "Akathisia – from the Greek for 'inability to sit'" which is a "neuropsychiatric syndrome characterized by subjective and objective psychomotor restlessness." Doc. 15, at 5. But Plaintiff does not cite the record and does not explain how this alleged diagnosis undermines the ALJ's rejection of Dr. Ayitey's opinion.

## D. The ALJ's alleged failure to develop the record.

In his second claim, Plaintiff alleges his testimony as to his mental limitations "should have set off bells in the ALJ's head" and the ALJ "should have ordered new IQ testing . . . to determine his current level of functioning." Doc. 15, at 8-9. Plaintiff also complains he has "a family history of Parkinson's and treating doctors who say he is declining. That should have been sufficient to trigger the ALJ to order Consultative Exams." *Id.* at 9.

An ALJ "'has broad latitude'" in determining whether to order a consultative examination or tests. *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (citation omitted). "A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or 'additional tests are required to explain a diagnosis.'" *Id.* (citation omitted). However, "there is no need for a consultative examination when the ALJ has enough information to make a disability determination." *Id.*

Relating to his mental impairments, Plaintiff does not point to any direct conflict in the medical evidence nor does he highlight any area in which the evidence is inclusive. Instead, he cites his own testimony as establishing a need for further testing or exam. But the ALJ found Plaintiff's testimony to be less than credible, AR 17-18, and Plaintiff does not challenge that finding. As for his alleged Parkinson's, Plaintiff points to only one treatment note where

he mentioned a family history of the disease, Doc. 15, at 5 (citing AR 417), and Plaintiff did not testify to any Parkinson's-related symptoms at his hearing. AR 37-59. Accordingly, the undersigned finds no grounds for reversal in the ALJ's failure to sua sponte order additional testing or a consultative exam. *See Jazvin*, 659 F. App'x at 489-90 (finding no grounds for reversal in the ALJ's failure to order additional tests or exams where the ALJ considered the medical record and the plaintiff's testimony and plaintiff pointed to "no direct conflict in the medical evidence, inconclusive medical evidence, or additional tests needed to explain her diagnoses").

### III. Recommendation and notice of right to object.

For the reasons discussed above, the undersigned recommends the entry of judgment affirming the Commissioner's final decision.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court by November 29, 2017, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 9th day of November, 2017.

                                                                SUZANNE MITCHELL
                                                                UNITED STATES MAGISTRATE JUDGE